# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Mag. No. 16-6652 |
| v. | : | Hon. Joseph A. Dickson |
| MOHAMMAD ABDUL WAHID, and MOHAMMAD IQBAL KABIR | : | |

I, Jennifer Miller, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

Continued on the attached page and made a part hereof:

_____
Special Agent Jennifer Miller
U.S. Department of Homeland
Security, Homeland Investigations

Sworn to before me and subscribed in my presence,
November 28, 2016, in Essex County New Jersey

HONORABLE JOSEPH A. DICKSON          _____
UNITED STATES MAGISTRATE JUDGE        Signature of Judicial Officer

## ATTACHMENT A

### COUNT ONE
### (Conspiracy to Commit Forced Labor)

From in or about October 2013 through in or about January 2016, in Middlesex County, in the District of New Jersey and elsewhere, defendants

**MOHAMMAD ABDUL WAHID, and
MOHAMMAD IQBAL KABIR**

knowingly conspired and agreed with each other and others to commit offenses against the United States, to wit:

a. to provide and obtain the labor and services of another person, namely two Bangladeshi citizens ("Victim-1" and "Victim-2"), by means of the abuse and threatened abuse of law and legal process and by a scheme, plan and pattern intended to cause Victim-1 and Victim-2 to believe that if Victim-1 and Victim-2 did not perform such labor and services, that Victim-1 and Victim-2 would suffer serious harm, contrary to Title 18, United States Code, Sections 1589(a)(3), (a)(4), and (d);

b. To benefit, financially and by receiving anything of value, from participating in a venture which engaged in the providing or obtaining of labor or services any person, here Victim-1 and Victim-2, by means of the abuse and threatened abuse of law and legal process and by means of a scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm and any combination thereof, knowing or in reckless disregard of the fact that the venture had engaged in the providing or obtaining of labor or services by any of such means, contrary to Title 18, United States Code, section 1589(b).

In violation of Title 18, United States Code, Section 1594(b).

## COUNT TWO
## (Conspiracy to Harbor Illegal Aliens for Financial Gain)

From in or about July 2011 through in or about January 2016, in Middlesex County, in the District of New Jersey and elsewhere, defendants

**MOHAMMAD ABDUL WAHID, and
MOHAMMAD IQBAL KABIR**

In knowing and in reckless disregard of the fact that such aliens had come to, entered, and remained in the United States in violation of law did conspire and agree with each other and with others to conceal, harbor, and shield from detection aliens, namely Victim-1, Victim-2, and other employees, in any place, including, but not limited to, residences in Middlesex County, New Jersey, and Astoria Queens, New York, for the purpose of commercial advantage and private financial gain, contrary to Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i).

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (a)(1)(B)(i).

## COUNT THREE
## (Willful Failure to Comply with Fair Labor Standards Act)

From in or about July 2011 through in or about January 2016, in Middlesex County, in the District of New Jersey and elsewhere, defendants

**MOHAMMAD ABDUL WAHID, and
MOHAMMAD IQBAL KABIR**

while operating an enterprise engaged in commerce (as these terms are defined in 29, United States Code, Sections 203(r) and 203(s)), did knowingly and willfully pay employees, who in any workweek were employed as factory workers and who were so employed for more than forty hours in the workweek in the aggregate, wages for such employment less than the minimum wage required to be paid under Title 29, United States Code, Section 206(a)(1), and wages for such employment which did not include overtime pay, for all hours in excess of forty hours in a workweek, of at least one and one-half times the regular rate of pay nor did defendant pay employees at or above the minimum wage, contrary to Title 29, United States Code, Section 207(a)(1).

In violation of Title 29, United States Code, Sections 215(a)(2), 216, 206(a)(1), and 207(a)(1).

## **ATTACHMENT B**

I, Jennifer Miller, am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other items of evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### **Background**

1. Defendant Mohammad Abdul Wahid ("Wahid") is the owner of two live Halal poultry slaughter businesses. The first is located in Queens, New York (the "New York Business") and the second is located in Perth Amboy, New Jersey (the "New Jersey Business") (collectively the "Businesses").

2. From on or before July 2011 through on or about January 19, 2016, defendant Wahid operated the New Jersey Business. The New Jersey Business was shut down by health inspectors in or around January 2016, but the New York Business is still operational.

3. While the Businesses both function in a similar manner, this complaint will focus on the conduct at the New Jersey Business. The New Jersey Business is a Halal business, meaning that it operated pursuant to Halal practices. In particular, Halal practices dictate that poultry must be slaughtered by Muslim individuals. Thus, defendant Wahid hired Muslim individuals to slaughter the chickens. Typically, the live chickens were delivered to the New Jersey Business and slaughtered by the Muslim employees. Defendant Wahid hired other individuals to de-feather and prepare the poultry for sale.

4. Defendant Wahid oversaw the operation at the New Jersey Business, but he also employed defendant Mohammad Iqbal Kabir ("Kabir") to work as the manager of the Businesses, which included handling hiring individuals to work at the New Jersey Business. In this role, Kabir hired employees, trained employees, and oversaw business operations.

5. Defendant Wahid also controlled a house located in front of the New Jersey Business (the "Boarding House"). Defendant Wahid told his employees to live at the Boarding House and charged them approximately $40.00 a week to stay there.

6.  At all times relevant to this complaint, the Fair Labor Standards Act ("FLSA") established minimum wage, overtime pay, recordkeeping, and other employment standards affecting employees in the private sector and in federal, state, and local governments. Among its provisions are that covered nonexempt employees, like the employees at the New Jersey Business, must receive overtime pay for hours worked over 40 hours per workweek, that is, any fixed and regularly recurring period of seven consecutive days, at a rate not less than one and one-half times the regular rate of pay.

7.  At all times relevant to this complaint, the Immigration Reform and Control Act of 1986 prohibited employers from hiring individuals, including undocumented aliens, who are not legally entitled to work in the United States. Employers are also required to verify that new hires are eligible to work by obtaining Employment an Eligibility Verification Form ("Form I-9") and also by examining the necessary supporting documents within three days of the employee's hire date.

### Overview

8.  During an investigation, law enforcement learned that defendant Wahid, defendant Kabir, and other co-conspirators (collectively the "Co-Conspirators") knowingly hired illegal aliens to work at both of the Businesses. With respect to the New Jersey Business, the Co-Conspirators hired and trained the illegal aliens to work at the facility, housed (i.e., harbored) them at the Boarding House, and paid them minimal wages in cash for working long hours in order to profit off the work performed by these aliens. The Co-Conspirators also used threats, such as calling the police to have Victim-1 and Victim-2 deported, and engaged in a plan or scheme to force Victim-1 and Victim-2 to continue working long hours for very little pay.

### The Scheme

9.  Defendants Wahid and Kabir directly employed individuals to manage, slaughter the poultry, and prepare the product for sale at the New Jersey Business (the "Employees"). All of the Employees in the New Jersey Business were undocumented illegal aliens, and both defendant Wahid and defendant Kabir were aware of this at the time they employed said aliens. As such, they were not authorized to work in the United States.

10. Defendants Wahid and Kabir were also aware that it was unlawful to employ these workers, so they concealed their employment by paying them in cash, entirely off the books. The defendants also did not issue W-2 forms for the Employees and did not withhold or pay federal income tax, Social Security tax, or

Medicare tax with regard to those illegal alien employees.

11. The Co-Conspirators concealed the identity of the Employees from the United States government by not declaring/listing the Employees on the businesses tax returns or payroll records.

12. Moreover, defendant Wahid and Kabir knew that they were required to pay overtime to the Employees for hours worked in excess of 40 hours per week. To conceal this failure to do so, the Employees were asked to sign a piece of paper before they received their cash payment. The defendants and/or a co-conspirator would later amend this piece of paper to reflect that the employee only worked 40 hours. However, the Employees worked in access of 40 hours a week, but their cash payments never reflected additional hours worked. Rather, the employees would make the same amount a week in cash regardless of the hours worked.

13. The Co-Conspirators paid the employees in cash – approximately $290 per week, minus approximately $40 for rent to live in the Boarding House, which was in disrepair and did not have heat or hot water. The Employees worked well above 40 hours a week, sometimes working between 70 to 100 hours a week. Meaning that they were being paid between approximately $2.90 to $4.00 an hour for their services, which was well below minimum wage. Moreover, the employees were never paid overtime pay as required by law.

14. In addition to paying the Employees well below the legal standards, defendant Wahid and defendant Kabir also engaged in forced labor practices with respect to two Muslim Bangladeshi citizens (hereinafter "Victim-1" and "Victim-2").

15. Defendants Wahid and Kabir hired Victim-1 and Victim-2 to slaughter the chickens at the New Jersey Business. Victim-1 and Victim-2 did not have the proper authorization to work in the United States. Despite this, the Co-Conspirators hired both of them to work at the New Jersey Business. Indeed, Kabir stated in sum and substance, no papers, no problem, meaning that he did not care that they were not legally permitted to work in the United States.

16. Moreover, Victim-1's and Victim-2's status as undocumented, illegal aliens, made them vulnerable to threats of deportation – something that the Co-Conspirators used to their advantage. Indeed, after Victim-1 and Victim-2 complained about the long hours they were working, among other things, the Co-Conspirators engaged in behaviors to force Victim-1 and Victim-2 to continue to work at the New Jersey Business. For example, when Victim-1 and Victim-2 separately complained about the long hours and the unsanitary conditions they were forced to work under, defendant Wahid and Kabir threatened to call the police to report them. Because both Victim-1 and Victim-2 were undocumented

aliens they were afraid of being arrested, detained, and eventually deported, and, as a result, Victim-1 and Victim-2 continued to work for the Co-Conspirators against their will.

17. In addition, the Co-Conspirators engaged in a pattern of behavior that forced Victim-1 and Victim-2 to continue to work under such deplorable conditions. For example, defendant Kabir would yell at Victim-1 and Victim-2 if they complained about the hours they were working or their working conditions. The Co-Conspirators isolated Victim-1 and Victim-2, they did not provide Victim-1 and Victim-2 with a lunch break, forced them to work long hours so they did not have time to look for other work, and paid them a substandard wage so they could not afford to live anywhere besides the Boarding House.

18. Based on my training and experience, the Co-Conspirators engaged in violations of conspiracy to engage in forced labor practices, conspiracy to harbor aliens for financial gain, and willful failure to comply with the Fair Labor Standards Act.